UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SCOTT A. ROUNTREE,

        Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

        Defendant.

CASE NO.    C08-5273JKA

ORDER AFFIRMING
ADMINISTRATIVE DECISION

      Plaintiff brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the administration's final decision denying plaintiff's application for social security benefits. This matter has been referred and reassigned to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). This matter has been fully briefed and after reviewing the record, the Court finds errors previously made have been cured and no further errors have been made by the administrative law judge. The Court therefore AFFIRMS the Social Security Administration's decision.

      The matter was previously reviewed by the Honorable Karen L. Strombom, who remanded the matter to the administration to correct certain errors. Specifically, Judge Strombom found the ALJ failed to properly consider the medical evidence (the opinions of Dr. Newell-Eggert, Dr. Van Dam, Dr. Lysak, and Dr. Regets). Judge Strombom found the ALJ properly discredited Plaintiff's testimony. A second administrative hearing was conducted on October 17, 2007, and now the matter is before the court to review the administration's most recent decision.

      Plaintiff argues for remand and/or reversal of the administration's decision to deny his application for benefits on the following basis: (i) the administrative law judge ("ALJ") improperly evaluated the

ORDER
Page - 1

opinion of Dr. Newell-Eggert; (ii) the ALJ improperly evaluated the opinion of Dr. Slack; (iii) the ALJ improperly evaluated the lay evidence of the occupational therapist, Donna Umali; (iv) the ALJ improperly rejected Plaintiff's testimony; and (v) the ALJ improperly found that jobs exist in significant number in the national economy.

The Court must uphold the administrations's determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the administrative decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

After carefully reviewing the parties' briefs and the administrative record, the court finds and orders as follows.

1. Questions of credibility are solely within the control of the ALJ. Samplev. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen v. Heckler, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. v. Chater, 81 F.3d 821, 834 (9th Cir. 1996)(citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. In determining a claimant's credibility, the ALJ may consider "ordinary

techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

As previously noted Judge Strombom considered this argument in the context of the ALJ's previous decision. For similar reasons, the ALJ did not err in his more recent decision when he discredited Plaintiff's allegations of complete disability. For example, medical evidence properly relied upon by the ALJ (see discussion below) contradicts the severity of Plaintiff's alleged left arm limitations. Plaintiff retained significant left shoulder range of motion around his alleged onset of disability in June 2002 (Tr. 443). In fact, Plaintiff reported having the ability to lift 50 pounds in June 2002, one year after his alleged disability began (Tr. 89-90). Although Plaintiff did not demonstrate any voluntary left shoulder range of motion (Tr. 303), he could flex his left elbow 90 degrees and grasp with his left hand (Tr. 303, 411), even though it was weaker than the right hand (Tr. 303, 405). In September 2002, Plaintiff's right shoulder had full range of motion (Tr. 251). Moreover, the ALJ noted that Plaintiff exaggerated his other alleged limitations (Tr. 535). Although Plaintiff claimed in July 2003 that he could only stand for 20 minutes and sit 30 minutes at a time (Tr. 448), he later testified that he had could stand for a couple of hours and had no sitting problems at all (Tr. 707). In a June 2004 psychological evaluation, Christopher Meager, Ph.D., only assessed borderline valid findings because Plaintiff exaggerated his symptoms (Tr. 397).

In sum, the ALJ did not err when he rejected or discredited Plaintiff's allegations regarding the severity of his limitations.

2. The ALJ properly weighed the medical evidence. The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of

the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, the ALJ properly discounted the various limitations assessed by Dr. Newell-Eggert. (Tr. 536-38). First, the ALJ found that Dr. Newell-Eggert presented inconsistent medical opinions (Tr. 536-37). In September 2003, Dr. Newell-Eggert opined that Plaintiff essentially had a non-functioning left shoulder and arm, but that he could nevertheless work as a dispatcher, customer service representative, and security guard if he only had to occasionally lift 20 pounds maximum (Tr. 289). In February 2004, Dr. Newell-Eggert opined that Plaintiff's medical condition would become "stationary" within 60 days, and that he was able to participate in vocational rehabilitation services (Tr. 275). However, Dr. Newell-Eggert assessed a five-pound lifting restriction for Plaintiff's right arm, even though there was no medical evidence that Plaintiff had any right arm impairment (Tr. 274). Dr. Newell-Eggert did not specify any restrictions on Plaintiff's left arm (Tr. 274). Despite her opinion that Plaintiff could engage in vocational rehabilitation, in February 2004 Dr. Newell-Eggert also opined that she "[did] not see [Plaintiff] in a job" (Tr. 273). Additionally, in March 2004, Dr. Newell-Eggert opined that Plaintiff could not perform any gainful work (Tr. 439). Internal inconsistencies within a physician's records constitute relevant evidence in judging the weight to be attributed to the physician's opinion. The ALJ properly noted Dr. Newell-Eggert's inconsistent opinions.

Second, the ALJ properly identified several medical findings that contradicted Dr. Newell-Eggert's opinion (Tr. 537-38). For example, in November 2001, examining physician Robert McElhaney, Jr., M.D., reported that Plaintiff could work in a job that did not require lifting more than five pounds with his left arm (Tr. 446). In July 2003, Plaintiff demonstrated the ability to perform left hand fine motor activities if he held his arm close to his body and did not have to reach (Tr. 4554). In August 2006, treating physician David Slack, M.D., reported that Plaintiff retained range of motion in his left elbow, wrist, and fingers (Tr. 670). Dr. Slack also reported that as recently as January 2007, Plaintiff's

left arm showed no atrophy (Tr. 667) even though he alleged disability beginning in June 2001. In May 2007, Plaintiff denied any significant left hand functional loss (Tr. 661). Plaintiff has maintained functional grip strength in his left hand (Tr. 449, 664) and had normal muscle bulk and tone in his left arm (Tr. 656, 664).

The ALJ also noted that Plaintiff retained the ability to drive throughout the adjudicated period (Tr. 532-33). Plaintiff testified that he drove his mother to her appointments and errands until she re-obtained her license (Tr. 486). Plaintiff testified that he still drove himself to his own appointments (Tr. 698). Dr. Newell- Eggert stated Plaintiff's driving would be restricted, but she did not provide any specific medical evidence to support a moderate restriction in driving in her checklist-style evaluation (Tr. 460). Thus, the ALJ properly rejected Dr. Newell-Eggert's assessed driving restriction, contrary to Plaintiff's argument. Similarly, the ALJ properly discounted Dr. Newell-Eggert's opinion that Plaintiff would likely miss more than four days of work per month (Tr. 460, 538).

The ALJ properly evaluated the opinions of Dr. Slack. In May 2007, Dr. Slack reviewed Dr. Newell-Eggert's February 2006 opinion regarding Plaintiff's limitations (Tr. 653-54). Dr. Slack agreed with Dr. Newell-Eggert's opinion that Plaintiff would likely miss more than four days of work each month (Tr. 653). Dr. Slack reasoned that because Plaintiff "has limited education . . . he would most likely need to work in a manual labor job" (Tr. 653). Dr. Slack noted Plaintiff's "minimal education" and learning disability to conclude that Plaintiff would "likely be in a job that required him to use [his left arm]," which would consequently exacerbate his pain and prevent him from working a regular schedule (Tr. 653-54). Dr. Slack added that he "cannot say for certain," but "there seems to [him] a high likelihood that this indeed would be the case" (Tr. 654).

The ALJ properly found that Dr. Slack's evaluation of Plaintiff's vocational situation exceeded his professional expertise (Tr. 539-40). Dr. Slack concluded that Plaintiff would "likely" be able to only find manual labor jobs (Tr. 653-54), but vocational findings are outside a physician's expertise and the Commissioner is not bound by physician opinions on these matters. *See* 20 C.F.R. § 404.1527(e)(1); and 20 C.F.R. § 404.1527(e)(3). The ALJ also properly noted (Tr. 539) that Plaintiff's testimony contradicted Dr. Slack's opinion that Plaintiff could not lift or carry more than five pounds occasionally with his right arm (Tr. 651). Plaintiff testified that he could lift a 10-pound bag of potatoes with his right arm (Tr. 708).

In February 2006, Plaintiff testified that he could lift 25 pounds with his right arm for one-third of an eight-hour workday (Tr. 496). Plaintiff clearly stated at both of his hearings that he could lift much more than five pounds with his right arm. Similarly, the ALJ properly discounted Dr. Slack's opinion that Plaintiff could only sit 30 minutes at a time and three to four hours each workday (Tr. 539, 651). In July 2003, Plaintiff demonstrated the physical ability to perform light work, which involves significant standing/walking or sitting (Tr. 447). *See* 20 C.F.R. § 404.1567(b). Plaintiff also testified that he had no problems sitting (Tr. 707).

The ALJ properly evaluated Ms. Umali's evaluation. In July 2003, occupational therapist Donna Umali observed Plaintiff in a one-time, Performance-Based Physical Capacity Evaluation (Tr. 447-56). Ms. Umali observed that Plaintiff could not lift or reach with his left arm (Tr. 448), and could grasp and manipulate with his left hand only if he held it close to his body (Tr. 452, 454). Ms. Umali also concluded that Plaintiff – based on his demonstrated abilities – could perform light work activity (Tr. 447). The ALJ referenced Ms. Umali's July 2003 report throughout his decision (Tr. 534-38). An ALJ shall note information from such sources along with the evidence of record in determining a claimant's limitations. *See* Social Security Ruling (SSR) 06-03p, available at 2006 WL 2329939, at *3.

3. At step-five of the administrative process the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that Plaintiff could perform in light of his age, education, work experience, and residual functional capacity. *See* <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1099 (9th Cir. 1999); <u>Roberts v. Shalala</u>, 66 F.3d 179, 184 (9th Civ. 1995). In <u>Tackett</u>, the court noted "there are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." <u>Id</u>.

Plaintiff argues the ALJ failed to identify jobs that Plaintiff is able to perform in the national economy, but this argument is premised on the arguments that the ALJ did not properly review the medical evidence or Plaintiff's subjective complaints.

Here, the ALJ relied upon a vocational expert, Paul Morrison, to provide testimony regarding whether an individual with given, hypothetical limitations could find work (Tr. 712-26). The hypothetical

limitations posed to the vocational expert properly reflected Plaintiff's physical and mental limitations.

4. Based on the above, the Court AFFIRMS the Social Security Administration's decision to deny Plaintiff's application for social security benefits.

DATED this 14th day of November, 2008.

> _/s/ J. Kelley Arnold_
> J. Kelley Arnold
> U.S. Magistrate Judge